# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER L. MITCHELL, ) | 1:08cv01624 DLB |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **BACKGROUND**

Plaintiff Chester L. Mitchell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] On November 20, 2008, the Honorable Oliver W. Wanger reassigned this action to the undersigned for all purposes.

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his application on January 5, 2005, alleging disability since April 26, 2002, due to a back injury, diabetes, high blood pressure, a seizure disorder, vision issues and problems related to his kidneys. AR 44-49. After Plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). AR 6, 10, 22. On January 24, 2007, ALJ Christopher Larsen held a hearing. AR 234-268. He denied benefits on March 29, 2007. AR 7-17. The Appeals Council denied review on August 26, 2008. AR 3-5.

Hearing Testimony

ALJ Larsen held a hearing on January 24, 2007, in Fresno, California. Plaintiff appeared with his attorney, Melissa Proudian. Vocational expert ("VE") Thomas Dachelet also appeared and testified. AR 234.

Plaintiff testified that he was 47 years old at the time of the hearing. AR 239. He was not married and has four children, all over the age of 18. Plaintiff lives with his mother and sister. AR 240. He has never had a driver's license because a doctor suggested his seizures may cause problems while driving. AR 242. Plaintiff completed the twelfth grade and received certification as a security guard. AR 243. Plaintiff last worked in 1992 or 1993 doing heavy labor. AR 243-244. He was "relieved" from that position because he and a co-worker "got into it." AR 244.

Plaintiff testified that he could not work because of his seizures, a prostate problem, back pain, a memory problem and vision issues in his left eye. AR 244. His calves and feet also constantly sting and burn. Plaintiff also has diabetes. AR 245.

Plaintiff explained that he has had seizures for quite some time and constantly has them. AR 245. He takes two medications, Keppra and Phenytonin, for seizures. He takes the medication every day as prescribed but his seizures are not controlled. AR 246. His last seizure was around January 1, 2007, but then he testified that he has had at least ten since that time. AR 247. Just prior to having a seizure, he gets weak and dizzy and starts to sweat. He doesn't

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

remember anything after the seizure starts and loses consciousness. AR 248. He is sometimes out for more than an hour and has been hospitalized. After the seizure, it takes him about 20 to 25 minutes to figure out what's happening. AR 249. He also has to rest for a seven to eight hour period after a seizure, though he sometimes has to rest for two or three days. AR 250. Plaintiff had a seizure the week before the hearing after which he had to rest for two or three days. AR 250. In October 2006, Plaintiff had a seizure as he was crossing a courtyard and was hospitalized. AR 251. Every time he is hospitalized, he is kept at least overnight. AR 252. He currently sees a neurologist every two weeks. AR 253.

Plaintiff is also on medication for his diabetes. AR 253. He told his doctor about the numbness in his calves, but hasn't gone back since that visit. AR 254. Generally, his calves stay numb anywhere from 7 hours to all day, every day, and he has to stay off his feet to relieve the numbness. AR 254. He also elevates his legs until the feeling comes back, about two to three hours. AR 255.

Plaintiff also testified that he has a blind spot in his left eye after being injured while working in construction. AR 257.

As for Plaintiff's back pain, he testified that the pain is in his lower middle back. He has pain about five to six times a month, for about a day at a time. He rated the pain at a seven or eight. He uses a heating pad to help relieve the pain, though it doesn't take the pain away completely. Plaintiff does not take any pain medication. AR 258.

Plaintiff was diagnosed with prostate cancer in 2006 and just started medication to control the need to urinate. AR 259. He currently urinates over 15 times a day, for about two to three minutes a time. AR 260.

Plaintiff further testified that he could maintain attention for about 30 minutes before he needed to take a break for about 10 to 15 minutes. AR 260.

Plaintiff does not have trouble bathing or dressing himself. He does not clean, cook or do laundry. AR 262. During a typical day, he watches television and talks with friends. AR 262.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person can lift and carry 50 pounds occasionally, 25 pounds

frequently, stand and walk a total of six hours and sit for a total of six hours. This person must avoid exposure to hazards such as unprotected heights or moving machinery, and cannot operate heavy equipment or drive a motor vehicle. AR 265. The VE testified that this person could not perform Plaintiff's past construction work, but could perform unskilled positions at the sedentary, light and medium levels. The number of positions would be eroded by about 10 percent to account for the driving limitations. AR 265.

For the second hypothetical, the ALJ asked the VE to assume a person that can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk a total of two hours and sit for a total of six hours. This person can understand, remember and carry out simple one or two step job instructions. This person would have to elevate his legs during the work day for one to two hours every day. This person could not perform any work. AR 266.

Plaintiff's attorney asked the VE to assume a person who could lift 20 pounds occasionally, 10 pounds frequently, stand and walk a total of two hours and sit for a total of six hours. This person can understand, remember and carry out simple one or two step job instructions. This person would only be able to concentrate in increments of 30 minutes and then would need to take a break. The VE testified that there would be no work for this person. AR 266.

Medical Record[3]

Plaintiff saw Physician's Assistant C. Simpson on June 24, 2004. He reported feeling confused and weak. He was diagnosed with an increase in seizures and an altered mental status. AR 70.

On March 7, 2005, Plaintiff saw Daniel Brubaker, D.O., who noted that Plaintiff was having memory problems and referred him to a neurologist. AR 68.

On August 6, 2005, Plaintiff saw Steven Stoltz, M.D., for a consultive physical examination. Plaintiff was a poor historian in describing his present illnesses, though he reported a history of hypertension, heart problems, arthritis in his knees, feet, hands and wrists and a

---

[3] Plaintiff's argument relates only to his borderline intellectual functioning and therefore only pertinent portions of the medical record will be summarized.

4

history of seizures dating back to the 1980s. Dr. Stoltz noted that he had a prior history of memory loss. AR 90-91.

On examination, Plaintiff was alert, cooperative and well-oriented in all spheres. Based on his physical examination, Dr. Stoltz diagnosed hypertension, arthralgias, seizure disorder, possible diabetes history and diminished vision in the left eye. He noted that Plaintiff has a variety of medical disorders. With Plaintiff's seizure history, which is still occurring three to four times per month, Plaintiff could not drive or operate heavy machinery. Otherwise, Dr. Stoltz found no other physical limitations. AR 92-95.

Plaintiff saw William A. Spindell, Ph.D., on September 23, 2005, for a consultive psychological examination. In reviewing Plaintiff's prior records, Dr. Spindell noted that during a 2001 psychiatric evaluation, Plaintiff was oriented to time, person, place and date and could recall three out of three objects. AR 110-111.

On mental status examination, Plaintiff had a "fair fund of cultural information and a modestly developed vocabulary." He was oriented as to time, person, place and purpose of the evaluation. His affect was flat, but he was not depressed. Plaintiff's remote and recent memory functions were within normal limits and there was no evidence of an underlying thought disorder. According to the Wechsler Adult Intelligence Scale, Plaintiff's Verbal IQ was 76, Performance IQ was 72 and Full Scale IQ was 72. AR 111.

Dr. Spindell diagnosed borderline intellectual functioning. Plaintiff appeared to have no difficulties with his activities of daily living, though he led a "somewhat constricted lifestyle with his mother." From a psychological point of view, Plaintiff could address the labor market in several entry-level capacities. AR 112.

On October 31, 2005, State Agency physician Archimedes Garcia, M.D., opined that Plaintiff had borderline mental retardation, but that it was not a severe impairment. AR 96.

On July 10, 2006, Plaintiff was admitted to Community Medical Center with an altered mental status probably secondary to seizure, history of hypertension and questionable hypoglycemia. A head CT was negative for any intracranial bleeds or masses and he was discharged on July 12, 2006. AR 123.

During a physical on August 17, 2006, Plaintiff's mental status was noted as normal. AR 122.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of borderline intellectual functioning and a history of seizure disorder. AR 12. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally, 25 pounds frequently, and to stand, walk or sit for about six hours. Plaintiff could not operate motor vehicles and had to avoid exposure to workplace hazards, such as working at unprotected heights or around moving machinery. AR 14. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work. Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform a significant number of unskilled jobs in the national economy at the sedentary, light and medium exertional levels. AR 15-16.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (borderline intellectual functioning and a history of seizure disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work, but (5) retains the RFC to perform a significant number of jobs. AR12-17.

Plaintiff argues that the ALJ failed to properly consider his borderline intellectual functioning.

## DISCUSSION

Plaintiff believes that the ALJ failed to include his borderline intellectual functioning in the hypothetical posed the to VE. He further contends that even if the impairment had been included, Plaintiff could not perform the alternate work identified by the VE.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." Embrey v. Bowen, 849 F.2d 418, 422 (9th

Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Of course, to warrant inclusion in the hypothetical question, there must be an actual limitation arising from an impairment. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence). Plaintiff's argument assumes that because the ALJ found his borderline intellectual functioning to be a severe impairment at step two, it must have imposed limitations that should have been included in his RFC. Such a conclusion misunderstands the sequential evaluation analysis.

As explained above, the ALJ conducts a five-step sequential inquiry in determining whether a claimant is disabled. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). At step two, the ALJ determined that Plaintiff had the severe impairment of borderline intellectual functioning. At step three, he determined that these impairments were not severe enough to meet or medically equal any of the listed impairments. AR 12-13.

Having determined that Plaintiff's mental impairment was severe, but did not meet or equal a listed impairment so as to be presumptively disabling, the ALJ determined Plaintiff's RFC. 20 C.F.R. 404.1520a(d)(3). Unlike the analysis at steps two and three, where the ALJ examines the degree of limitation, RFC is the most a claimant can do, "*despite* [his] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

In analyzing the medical evidence, the ALJ explained that there was nothing in the record to support a finding that Plaintiff had any physical or mental condition to cause any difficulty with his concentration. AR 15. The ALJ adopted the consultive psychologist's finding that Plaintiff remained capable of "several entry-level capacities," noting that he provided "additional details indicating Mr. Mitchell had few specific functional limitations resulting from his borderline intellectual functioning." AR 15, 112. *Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on

8

examiner's independent findings and observations). Indeed, the ALJ explained that Plaintiff was able to take tests to measure his intellectual functioning, was able to work in the competitive workplace as a construction laborer, was not dependent on others to take care of his personal needs and did not demonstrate an inability to follow directions such that the use of standardized tests was precluded. AR 13. Moreover, all of Plaintiff's IQ scores were above 70. AR 14.

He also noted that the State Agency physician determined that Plaintiff did not have a severe mental impairment, which indicates that Plaintiff had no work-related limitations resulting from his borderline intellectual functioning. AR 15, 96.

Moreover, as the ALJ noted, there is no objective evidence or opinions in the record that contradicts the findings of the consultive examiner and State Agency physician. AR 15.

The ALJ therefore found that despite Plaintiff's borderline intellectual functioning, he could perform unskilled work. Plaintiff's argument fails because it tries to impose a step two finding on the RFC determination. *See eg. Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."). His argument is without merit and must be denied.

Insofar as Plaintiff cites *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997) in arguing that borderline intellectual functioning automatically imposes nonexertional limitations, *Lucy* does not support his argument. In *Lucy,* the ALJ made a specific, albeit inconsistent, finding that the claimant's borderline intellectual functioning reduced the full range of sedentary work available. Nor does *Lucy* stand for the proposition that borderline intellectual functioning automatically imposes limitations. Rather, the Court recognized its prior rulings that borderline intellectual functioning simply required the use of a VE. *Lucy,* 113 F.3d at 908.

Here, the ALJ used a VE and determined that Plaintiff could perform unskilled work. Moreover, even though the ALJ didn't specifically ask the VE about borderline intellectual functioning, the VE testified that Plaintiff could perform *unskilled* work. Unskilled work is defined under Social Security regulations as requiring little or no judgment to do simple duties

that can be learned on the job in a short period of time. *See* 20 C.F.R. § 416.968(a). Plaintiff presents no evidence to contradict this finding.

To the extent that Plaintiff contends that the aptitude levels in *The Revised Handbook* require a finding that Plaintiff cannot perform any work, his strained argument does not undermine the VE's testimony. "A VE's recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ's RFC finding, as well as his hypothetical question posed to the VE, are supported by substantial evidence and free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Chester L. Mitchell.

IT IS SO ORDERED.

Dated: **February 11, 2010**   **/s/ Dennis L. Beck**
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE